# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **NATIONWIDE PROPERTY AND CASUALTY COMPANY and NATIONWIDE MUTUAL INSURANCE  COMPANY ,** | ) ) ) |
| **Plaintiffs,** | ) |
| **VS.** | ) |
| **JOHN H. ALLEN, d/b/a JOHN H. ALLEN CONSULTING,** | ) ) |
| **Defendant.** | ) |

**Civil Action No.:
2:08-cv-0124-JHH**

## MEMORANDUM OPINION

The court has before it the May 8, 2009 motion (doc. #33) of Plaintiffs Nationwide Property and Casualty Company and Nationwide Mutual Insurance Company (collectively referred to herein as "Nationwide") for summary judgment. Pursuant to the court's order of May 11, 2009 (doc. #35), the motion was deemed submitted, without oral argument, as of June 8, 2009.  Also pending before this court, and considered herein, are: Nationwide's motion (doc. #36) to strike statements and reply brief and Nationwide's motion (doc. #40) to strike John Allen's affidavit.

## I.   PROCEDURAL HISTORY

Plaintiffs Nationwide Property and Casualty Company and Nationwide Mutual Insurance Company commenced this action on January 23, 2008 by filing a complaint (doc. #1) for declaratory judgment in this court, asking this court to declare that the insurance policies issued by Nationwide to Allen do not provide coverage for a lawsuit currently pending against Allen in the Circuit County of Jefferson County, Alabama, Civil Action No. CV-2007-902962 (the "Ballard lawsuit").  After granting motions (see docs. #22, 23) to dismiss and considering whether jurisdiction was proper over the declaratory judgment issue, this court determined that Nationwide's duty to defend claim would proceed to a final ruling, while the duty to indemnify claim would remain part of the case, but would not be considered until the earlier of: (a) the final disposition of the underlying lawsuit; (b) a ruling on the duty to defend, at which time the court would entertain any motion that the parties may wish to file concerning the duty to indemnify; or (c) an event not foreseeable which might impact the duty to indemnify issue.  (See Doc. #28 at 12).  The duty to defend issue is now properly before the court on Nationwide's summary judgment motion.  (See Doc. #33 at 2) ("Nationwide moves this Court to grant summary judgment in its favor and declare that Nationwide has no duty to defend John H. Allen, d/b/a John H. Allen

Consulting ("Allen") in the underlying litigation pending in the Circuit Court of Jefferson County, Alabama, Civil Action Number CV-07-902962 . . .").

## II.   THE MOTIONS TO STRIKE

### A.   Introduction

On June 8, 2009, Nationwide filed a motion (doc. #36) to strike statements and reply brief.  The ground for that motion was this: that Plaintiff's opposition brief attempted to set forth facts to contradict Nationwide's statement of facts, but that none of the statements were made under oath as required by Federal Rule of Civil Procedure 56(e)(2).  The court provided for the Plaintiff, proceeding herein *pro se*, to respond to the motion (see doc. #37).  Plaintiff did so on June 24, 2009 by filing a sworn affidavit (doc. #39) in opposition to the motion for summary judgment.  The sworn affidavit (doc. #39) contains substantially the same information as the original opposition (doc. #38).  Nationwide then filed the motion (doc. #40) to strike John Allen's affidavit, contending that it "is replete with statements that are inadmissible" under Federal Rules of Civil Procedure 56(e) and 56(c).

Given this procedural history, the original motion (doc. #36) to strike statements filed by Nationwide is **MOOT** and only the second motion (doc. #40) to strike will be considered substantively herein.

**B.      Major Portions of the Sworn Affidavit are Inadmissible**

Plaintiff's sworn affidavit (doc. #39) is substantively similar to his original statement (doc. #38) in opposition to the motion for summary judgment, including portions reciting his personal experiences and portions attempting to analyze the law. While the affidavit solves the original problem (see doc. #36) of unsworn testimony in an attempt to contradict facts, it creates new problems.  Federal Rule of Civil Procedure 56(e) reads as follows:

> (1) ***In General.***  A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached or served with the affidavit.  The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

> (2) ***Opposing Party's Obligation to Respond.***  When a motion for summary judgment has been properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Allen's affidavit is replete with conclusory statements about which Allen clearly has no personal knowledge.  "An affidavit filed in support of, or in opposition to, a summary judgment motion will not be considered by the court unless it is based on personal knowledge.  Such an affidavit must be based on facts, may not consist of

4

bare conclusory statements, and must contain information that allows more than

speculative or conjectural inferences." Carter v. Cantrell Mach. Co., Inc., 662 So.2d

891, 893 (Ala. 1995) (citing Perry v. Mobile County, 533 So.2d 602 (Ala. 1988)).

Because paragraphs 3, 4, and the conclusion – in their entirety – and major portions

of paragraph 5[1] contain conclusions of law and other

---

[1] Paragraph 5 contains many bare conclusory statements and inappropriate legal conclusions.

- "That this statement in opposition is supported by the pleadings . . . case law, the Homeowners policy, the Umbrella policy and the following facts and analysis." (Doc. #39 at 2).
- All of the portions attempting to interpret the law. (Doc. #39 at 4, 5, 8, 9, 10, 12, 13, 14, 15).
- "Nationwide never investigated whether or not Allen received the policies, changes, or endorsements despite knowing this was a critical element in the cognitive assessment of coverage." (Doc. #39 at 5).
- "Nationwide never investigated the facts of what Agent Canfield had represented, nor provided any affidavits of what he represented to John H. Allen, in 1993-1994, not determined if the policy they were evaluating was in fact the correct policy language that applied and originally contracted for and believed to exist.  You do not get the policies before you pay for them." (Doc. #39 at 5).
- "The intentional acts provision of the policies are clearly not applicable as they are subject to the "unexpected and unintended" exception to the exclusion, a fact which Nationwide elects to ignore to support their flawed analysis." (Doc. #39 at 8).
- "Nationwide certainly ignores the allegations of Negligence in the Ballard Complaint in order to focus on intent and denial . . . Nationwide knows there are exceptions to the exclusions but elects to ignore and never address same as this would conflict with their focus on denial by not knowing or determining the facts." (Doc. #39 at 9).
- "Nationwide's coverage analysis is invalid and was not to Industry Standards.  Nationwide has only construed the policy in favor of denial and have not given objective nor cognitive consideration for the coverages that exist.  Nationwide cos. have not construed coverages as narrow as possible as required." (Doc. #39 at 10).

conjectural inferences that are not based on personal knowledge, they are not proper

subjects of the affidavit and will be stricken from consideration herein.  However, the

legal analysis that Allen includes in his original statement in opposition (doc. #38)

will be considered for purposes of determining whether Nationwide owes Allen a

duty to defend.

Nationwide also alleges that the portions of Allen's affidavit should be stricken

that reference conversations Allen had with the Canfield Insurance Agency, as those

statements "constitute hearsay."  (See Doc. #40 at 2).  But a statement is not hearsay

if it constitutes an admission by a party-opponent.  See FED. R. EVID. 801(d)(2).

Here, the conversations Allen relays that he had with purported-agent Canfield could

well fit into that category:

> Back in 1993 or 1994, I received a call from the Canfield Insurance
> Agency, a Nationwide Agency, on an offer to procure needed insurance
> coverages for myself, family, property and business interests.  I met with
> Agent Canfield and discussed my needs in coverages including my self-
> employed status.  We discussed whether a separate policy was needed
> for the business.  I was informed that there was no need for a separate
> business policy as my work was only providing opinions about

---

- • "There is no question that the Declarations sheets of both the policies produced show coverage for Personal Liability for Property Damage and Bodily Injury."  (Doc. #39 at 11).
- • "There is no question that the having to file a police report on the felony theft of services and the misdemeanor theft of personal and intellectual property and filing a Bar Complaint is not a normal business activity and would be personal in nature.  Allen's actions were not a business pursuit …"  (Doc. #39 at 11).

> insurance coverages and this would be covered under the umbrella policy.
>
> . . .
>
> I relied on the representations of Agent Canfield that I would be provided all the coverages needed and the Umbrella would take care of any business pursuits.

(Doc. #39 at 2-3).

What remains to be seen is whether Canfield acted as a representative of Nationwide (see FED. R. EVID. 801(d)(2)) and whether the alleged conversation with Canfield can help Allen survive summary judgment.

For the foregoing reasons, the Motion (doc. #40) to Strike John Allen's Affidavit is **GRANTED IN PART** and **DENIED IN PART** as set out above.

## III.   STANDARDS FOR EVALUATING SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those

portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See id. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary

judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial

burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

## IV.    RELEVANT UNDISPUTED FACTS[2]

### A.    The Underlying Lawsuit

Nationwide Property and Casualty Company issued a homeowners policy of insurance to Allen, number 77 01 HO 940723, (the "homeowner's policy"), affording $300,000 in basic coverage.  (See Doc. #34, Exh. 1).  Additionally, Nationwide Mutual Insurance Company issued an umbrella policy to Allen, policy number 77 01 PU 717801 (the "umbrella policy"), affording $1,000,000 in coverage.  (See Doc. #34, Exh. 2).  Nationwide mailed both the homeowners policy and the umbrella policy to John H. Allen at the mailing address listed on the policies – Post Office Box

---

[2] Only the properly presented facts (see Section II, *supra*) will be considered herein.  If facts are in dispute, they are stated in the manner most favorable to the plaintiff.  See Fitzpatrick, 2 F.3d at 1115.

531166, Birmingham, Alabama 35253-1166.[3]  (See Doc. #36, Exh. 1 at ¶¶ 4-6).

Allen "den[ies] or just do[es] not remember ever receiving the original policy 15

years ago"[4] but admits that he has "not received any modifications of the policies in

the last 8 years."  (Doc. #39 at 4).

On December 21, 2007, the Ballard lawsuit was filed against John H. Allen

d/b/a John. H. Allen Consulting ("Allen").  (See Doc. #34, Exh. 3).  That suit arose

out of an agreement between Allen and the Ballard plaintiffs for Allen to perform

expert insurance witness services in litigation pending in Calhoun County, Alabama.

(See id.)  A dispute arose over invoices submitted by Allen and subsequent actions

taken by Allen.[5]  (See id.)  The Ballard complaint alleges that Allen "negligently

and/or wantonly slandered and defamed Plaintiffs by publishing false statements" and

---

[3] Allen asserts that there are additional addresses at which he can receive mail.  (See Doc. #39 at 4).

[4] This "denial" is not enough to refute the fact that Nationwide mailed the policies to Allen.  See Ala. Code Section 27-14-19 ("Subject to the insurer's requirements as to the payment of premium, every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance[.]"); see also Corinth Bank & Trust Co. v. Cochran, 121 So. 66, 67 (Ala. 1929) ("A letter properly addressed, stamped, and mailed is presumed to have been received in due course.  Evidence denying the receipt of the letter does not render the evidence of the mailing inadmissible."); McCray v. State Farm Fire & Cas. Co., 892 So.2d 363, 368 (Ala. 2004) (same).

[5] Allen asserts that the Ballard plaintiffs failed to pay him after the case he was hired to consult on was dismissed.  (See Doc. #39 at 5).  As a result of Ballard's failure to pay, he filed a police report against the Ballard firm, as well as a complaint with the Alabama Bar Association.  (See Doc. #39 at 6).  "The actions of filing the report and complaint resulted in an unexpected and unintended result of Ballard et al. suing me to attempt avoidance of paying their bill after the case was over."  (Doc. #39 at 7).

that Allen "wrongfully defamed Plaintiffs by publishing false statements." (See id.)

Nationwide agreed to defend Allen in the Ballard lawsuit under a reservation of rights

and hired counsel to provide a defense for Allen. (See Doc. #33 at 3, ¶ 4).

## B.   Pertinent Policy Provisions

The homeowner's policy of insurance issued to Allen provides the following:

Definitions:

3.   "BUSINESS" includes trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time or temporary basis.

(Doc. #34, Exh. 1 at A1).

\*\*\*

Section II

Liability Coverages

ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1.   "BODILY INJURY" means bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

\*\*\*

12

4.      "OCCURRENCE" means **bodily injury** or **property damage** resulting from an accident, including continuous or repeated exposure to the same general condition.   The **occurrence** must be during the policy period.

***

**Coverage Agreements**

**Coverage E       --     PERSONAL LIABILITY**

**We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property.

***

(Doc. #34, Exh. 1 at G1).

**Liability Exclusions**

(Section II)

1.      Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to **bodily injury** or **property damage**:

    a)     caused intentionally by or at the direction of an **insured**, including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct.

***

    c)     arising out of **business** pursuits of an **insured**.

(Doc. #34, Exh. 1 at H1).

***

13

1.      resulting from acts or omissions relating directly or indirectly to sexual molestation, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

                        ***

2.      Coverage E – Personal Liability does not apply to:

    a)      liability under any loss assessment contract or agreement unless optional loss assessment coverage is purchased[.]

(Doc. #34, Exh. 1 at H3).

                        ***

POLICY COVERAGE OPTIONS

The following options apply only if they are indicated on the Declarations. They are subject to all provisions of this policy except as modified herein.

                        ***

(Doc. #34, Exh. 1 at K1).

                        ***

**Option M**.[6]   **Personal Injury Coverage** under **Coverage E – Personal Liability**, the definition of **bodily injury** is amended to include **personal injury**.

**Personal injury** means injury as a result of:

    1.      false arrest, false imprisonment, wrongful eviction, or wrongful entry;

---

[6] Allen did not purchase the coverage available under Option M of the Homeowner's Policy.  (See Doc. #34, Exh. 1 at Declarations).

14

    2.       wrongful detention, malicious prosecution, or humiliation;

    3.       libel, slander, defamation of character, or

    4.       invasion of rights of privacy.

Section II – Liability Exclusions do not apply to **personal injury. Personal injury** coverage does not apply to:

    1.       liability assumed by an **insured** under a contract or agreement;

    2.       injury caused by violation of a penal law or ordinance if committed by or with the knowledge or consent of an **insured**;

    3.       injury sustained by a person as a result of an offense directly or indirectly related to that person's employment by the **insured**;

    4.       injury arising out of or in connection with **business** pursuits of an **insured**;

    5.       injury resulting out of any professional liability;

    6.       injury resulting from an **insured** transmitting a communicable disease, including injury arising from the possibility of such transmission;

    7.       civic or public activities performed for pay, other than reimbursement of expenses, by an **insured**; or

    8.       injury to an **insured** as defined in general Definitions 4.a) and 4.b).

                            ***

(Doc. #34, Exh. 1 at K4).

The umbrella policy of insurance issued to Allen provides in pertinent part as follows:

Coverages

EXCESS LIABILITY INSURANCE

**We** will pay for damages an **insured** is legally obligated to pay due to an **occurrence** in the excess of:

    a)    the **retained limit**; plus

    b)    any other liability insurance available to an **insured** which applies to an **occurrence**.

The **bodily injury** or **property damage** must occur during this policy's term. The **personal injury** must be due to an offense committed during this policy's term.

(Doc. #34, Exh. 2 at C1).

          ***

DEFINITIONS:

          ***

    5.    **Occurrence(s)** means an accident including continuous or repeated exposure to the same general conditions. It must result in **bodily injury, property damage,** or **personal injury** caused by an **insured**. The **occurrence** resulting in **bodily injury** or **property damage** must be during the policy period. The **occurrence** resulting in the **personal injury** must be to an offense committed during the policy period.

6.   **Bodily injury** means bodily harm, including resulting sickness, disease, or death.  **Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

\*\*\*

8.   **Personal injury** means:

   a)   false arrest, false imprisonment, wrongful conviction, wrongful entry;

   b)   wrongful detention or malicious prosecution;

   c)   libel, slander, defamation of character, or invasion of rights of privacy.

\*\*\*

(Doc. #34, Exh. 2 at D1).

\*\*\*

Exclusions:

Excess liability and additional coverages do not apply to:

1.   **Bodily Injury, Property Damage**, and **personal injury** caused intentionally by or at the direction of an **insured**, including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct.  This does not include **bodily injury** or **property damage** caused by an **insured** trying to protect person or property.

\*\*\*

17

4.   Professional liability for an **occurrence** resulting from an **insured** providing or failing to provide professional services unless insurance is specifically provided by an endorsement to this policy.

5.   An **occurrence** arising out of the **business** pursuits or **business property** of an insured. [. . .]

*** 

9.   **Personal injury** arising out of:

a)   willful violation of a law by or with the consent of the **insured**;

b)   the **insured's** activities in advertising or broadcasting;

c)   libel, slander, defamation, or violations of rights of privacy if:

1)   made by or with the consent of the **insured**; and

2)   made with knowledge of their falsity; or

3)   the injurious activities began before this policy's effective date.

(Doc. #34, Exh. 2 at E1-E2).

## V.   APPLICABLE LAW AND SUBSTANTIVE ANALYSIS

### A.   Interpreting the Insurance Policy

It is well established that the insurer's duty to defend is more extensive than its duty to pay.  See Ladner & Co., Inc. v. Southern Guar. Ins. Co., 347 So.2d 100,

18

102 (Ala. 1977); see also United States Fid. & Guar. Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala. 1985).  But that broad duty is not all-encompassing.  Rather, the determination of whether the duty to defend is activated is determined from the face of the underlying complaint against the insured.  See Alfa Mut. Ins. Co. v. Morrison, 613 So.2d 381, 382 (Ala. 1993); see also Nationwide Ins. v. Zavalis, 52 F.3d 689, 693 (7th Cir. 1995) ("The insurance company's obligation to supply a defense is most often determined primarily, if not exclusively, from the face of the underlying complaint against the insured.").  If the allegations of the injured party's complaint show an *accident or occurrence within the coverage of the policy*, then the insurer is obligated to defend, regardless of the ultimate liability of the insured.  See Ladner, 347 So.2d at 102.  In determining whether a complaint alleges a covered injury, the insurer (and the court) must also investigate the facts (which may be proved by admissible evidence) surrounding the incident in order to determine whether it has a duty to defend.  See Porterfield v. Audubon Indemnity Co., 856 So.2d 789, 791 (Ala. 2002).  "When a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy."  See Porterfield, 856 So.2d at 791.

**B.    The Complaint in the Ballard Lawsuit does not Implicate the Nationwide Policies**[7]

The homeowner's policy provides coverage for "damages an insured is legally obligated to pay due to an occurrence." (Doc. #34, Exh. 1 at G1). "Occurrence" is defined in the policy as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition." (Doc. #34, Exh. 1 at G1). "Bodily injury" is defined as "bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm." (Doc. #34, Exh. 1 at G1). The umbrella policy contains substantially the same coverage language and definitions. (Doc. #34, Exh. 2 at C1, D1). Thus, the threshold inquiry for this court is whether the incident of the Ballard lawsuit can be properly classified as an "occurrence" under the homeowners and/or umbrella policies. See Ladner, 347 So.2d at 102.

Plaintiff Allen wholly fails to consider this threshold inquiry, instead jumping ahead by arguing that coverage is available under the analysis that his actions were

---

[7] Because Nationwide is entitled to summary judgment on the basis that the Ballard lawsuit does not constitute an occurrence, this court will forego addressing whether Allen's actions were "intentional" such that they are excluded from coverage under the policies, and will also forego addressing whether the "business pursuits" exclusions preclude coverage. (See Doc. #33 at 16-24; see also Docs. #38, 39).

not done intentionally to initiate the Ballard lawsuit.[8]  (See Doc. #38; see also Doc. #39 at 7).  But the Ballard lawsuit describes no actual physical injury or bodily harm. Count I of the Ballard complaint alleges that Allen "negligently and/or wantonly slandered and defamed Plaintiffs by publishing false statements."  (Doc. #34, Exh. 3).  Count II of the Ballard complaint alleges that Allen "wrongfully defamed Plaintiffs by publishing false statements."  (Doc. #34, Exh. 3).  Each of those counts allege damages to the Ballard firm in the form of "substantial attorney time" and "substantial mental anguish,"  (Doc. #34, Exh. 3), neither of which fit into the definition of occurrence as described by either the homeowners or umbrella policy, which specifically exclude "emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm."[9]  (Doc. #34, Exh 1. at G1).  There is no duty to defend where there is no "occurrence" within the policy definition of that term.  See Ladner, 347 So.2d at 102; see also Couch on

---

[8] "The Ballard lawsuit came after the case I was hired to consult on had ended;" 'the actions of [Allen] of filing [a police] report [against the Ballard firm] and complaint [by Allen regarding the Ballard firm to the Alabama Bar] resulted in an unexpected and unintended result of Ballard et al. suing [Allen] to attempt avoidance of paying their bill after the case was over." (Doc. #39 at 7).

[9] Had Allen purchased additional coverage providing for damages related to libel, slander, and defamation, the outcome here would be different.  Allen does not dispute that he did not purchase that additional coverage.  And while his affidavit alleges conversations with an Agent Canfield related to coverage, there is nothing in the alleged content of those conversations to even suggest that Allen would be fully covered even where incidents do not fit the definition of "occurrence."  (See Doc. #39 at 2-3, ¶ 5).

Insurance, 3d. ed., § 201:6 (June 2009).   Therefore, Nationwide is entitled to judgment as a matter of law.   Nationwide has no duty to defend Allen in the underlying litigation pending in the Circuit Court of Jefferson County, Alabama, Civil Action Number CV-07-902962.

## VI.   CONCLUSION

Nationwide is entitled to judgment as a matter of law because the Ballard lawsuit does not constitute an "occurrence" under either of the policies at issue here. Nationwide has no duty to defend John H. Allen, d/b/a John H. Allen Consulting ("Allen") in the underlying litigation pending in the Circuit Court of Jefferson County, Alabama, Civil Action Number CV-07-902962.   A separate order will be entered.

**DONE** this the   9th   day of July, 2009.

_____

SENIOR UNITED STATES DISTRICT JUDGE